IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES CHELIOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06 C 909 |
| | ) |
| SERGEANT LINDSEY HEAVENER, | ) HONORABLE CHARLES R. NORGLE |
| POLICE CHIEF GERDES, and | ) |
| CITY OF JOLIET, | ) |
| Defendants. | ) |

**AMENDED OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Defendant Sergeant Lindsey Heavener's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND[1]

### A. Facts

This case arises out of an altercation that occurred on February 20, 2005, at Dimitri's Bar and Grill, 700 West Jefferson, in Joliet, Illinois. Plaintiff James Chelios ("Chelios") owns Dimitri's. On February 19, 2005, between 9:00 and 11:00 p.m., a Joliet Police Officer went to Dimitri's and advised Chelios that a shooting had occurred in the neighborhood. The officer stated that he received information that the shots were fired from Johns Street, which is located

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

near Dimitri's. In response, Chelios informed the officer that he was in the parking lot five minutes prior, and did not see anything relating to the shooting. This prompted the Joliet police officer to leave. It was not clear whether the shots were fired from or toward the parking lot. The bar remained open.

Three hours later, at 2:20 a.m., on February 20, 2005, Defendant Sergeant Lindsey Heavener ("Heavener") of the Joliet Police Department was parked in his squad car in the parking lot of the Stan Kelly Liquor Store, which is one block west of Dimitri's bar. At 2:30 a.m., Heavener and his lieutenant were talking with one another, when Heavener heard between eight to ten gunshots, which he believed came from the east. Heavener believed that the shots originated from Dimitri's. A number of shell casings were later found in the area. After he talked to his lieutenant, Heavener went to Dimitri's. He walked up to the front door of the bar, and told Chelios that more shots had been fired in the area and that the police needed to shut his place down for the night. Chelios claims that he complied with Heavener's order and began leading people out of the bar. Many of the patrons who left the bar did not immediately leave the parking lot. This was the first encounter between Heavener and Chelios.

The second encounter took place less than five minutes later, when Chelios went towards Heavener in the parking lot. According to Heavener, Chelios began to yell at him, saying that Heavener was a liar, and that the police were fabricating the entire incident. Then, Heavener claims, a fight broke out between two women, and he turned away from Chelios and walked back to the west side of the building, to control the crowd of essentially bar patrons. The bar's regular closing time was 3:00 a.m.

The third encounter between Heavener and Chelios occurred approximately five minutes

later, Heavener and the other officers were still in the process of investigating the reckless discharge of a firearm. According to Heavener, Chelios walked around the corner of the building and began to yell at Heavener. Chelios pointed his finger in Heavener's face, and eventually poked him in the chin. Heavener described Chelios as being "right up in my face." As soon as Chelios poked Heavener, William Molton ("Molton"), the bar's bouncer, interceded and pulled Chelios away. At that point, Heavener told Chelios to "get back here," yet Molton continued to escort Chelios back to the bar. Heavener went after the two men; however Molton had placed himself between Chelios and Heavener. Bar patrons were also nearby. Heavener told Molton not to interfere, and Molton immediately stepped away.

Then, Chelios attempted to open the bar door, and Heavener grabbed his right shoulder and informed Chelios that he was under arrest. Chelios alleges that Heavener and two other officers then grabbed him by the neck and threw him to the ground. Heavener alleges that Chelios fell to his knees, and that in the attempt to restrain him, Heavener fell to the ground as well. Chelios was handcuffed while he was on the ground, and eventually transported to the Joliet Police Department.

## B. Procedural History

On February 17, 2006, Chelios filed his complaint, alleging violations of 42 U.S.C. § 1983 against Heavener (Count I), and the Joliet Police Chief David Gerdes ("Gerdes"), and the City of Joliet (Count III), assault and battery by Heavener (Count II), and malicious prosecution against the named defendants (Count IV). On April 24, 2006, the court granted Defendants' Motion to Dismiss Counts III and IV of the Complaint.

Then, on August 2, 2006, the court granted Heavener leave to file a motion for summary

3

judgment on the issue of probable cause to arrest on Count One, and the excessive force claim in Count Two. On August 24, 2006, Heavener filed his Motion for Summary Judgment, and on September 8, 2006, Chelios filed his Response. Heavener Replied on September 25, 2006. The Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between

4

reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Chelios's § 1983 Claims

### 1. *Unlawful Arrest Claim*

In order for a law enforcement officer to posses probable cause for an arrest, he or she must "reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect has committed or was committing an offense." United States v. Parra, 402 F.3d 752, 764 (7th Cir. 2005) (quoting Payne v. Pauley, 337 F.3d 767, 776 (7th Cir. 2003)). The officer's determination of probable cause centers around "an exercise of judgment which 'turns on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of facts.'" Id. (quoting Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir. 1993)).

The probable cause standard "applies to all arrests, without the need to 'balance' the interest and circumstances involved in particular situations." Atwater v. City of Lago Vista, 532

U.S. 318, 354 (2001) (quoting Dunaway v. New York, 442 U.S. 200, 208 (1979)); United States v. Breit, 429 F.3d 725, 728 (7th Cir. 2005) ("[P]robable cause is a fluid concept based on common-sense interpretations of reasonable police officers. . . .") (quoting United States v. Brown, 366 F.3d 456, 458 (7th Cir. 2004)). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 US 213, 245 n.13 (1983). "The legality under the Fourth Amendment of an arrest for violating state law depends on that law in the following sense: there must be probable cause to believe that a state crime has been committed." Ryan v. County of DuPage, 45 F.3d 1090, 1093 (7th Cir. 1995).

Moreover, probable cause "to arrest is an absolute defense to any claim under Section 1983 against police officer for wrongful arrest, false imprisonment, or malicious prosecution." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006) (quoting Potts v. City of Lafayette, 121 F.3d 1106, 1113 (7th Cir. 1997)). An "*ex parte* finding of probable cause such as grand jury indictment provides adequate assurance that the suspension is not unjustified." Gilbert v. Homar, 520 U.S. 924, 934 (1997) (quoting FDIC v. Mallen, 486 U.S. 230, 240-41 (1988)). The court "evaluates probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006)(quoting Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 2000)).

Unquestionably, the facts known to Heavener at the time of Chelios's arrest are sufficient to establish probable cause. Chelios poked Heavener in the chin, which, under Illinois law, is an aggravated battery. See 720 ILL. COMP. STAT. 5/12-4(b)(6); see also Cefalu v. Vil. of Elk Grove,

211 F.3d 416, 425 (7th Cir. 2000) ("aggravated battery occurs when one commits battery on a person known to be a police officer, while the officer was engaged in the execution of his official duties"). Furthermore, Chelios continued to flee Heavener, with Molton's assistance, while Heavener had instructed to Chelios to "get back here." This established probable cause to arrest for resisting arrest. See 720 ILL. COMP. STAT. 5/31-1(a); see also Ryan, 45 F.3d at 1093 ("Resistance to a lawful order of a police officer is a crime under Illinois law"). While Chelios was not charged with this crime, the court notes that probable cause did exist for Heavener to arrest Chelios for this violation.

Chelios further attempted to resist arrest when he grabbed hold of the front door to Dimitri's, and tried to inhibit Heavener from taking him into custody. It took three officers, including Heavener, to finally subdue and handcuff Chelios. Therefore, based on the facts in evidence, the court finds that Heavener had probable cause to arrest Chelios for both aggravated battery and resisting arrest (if he had chosen to do so), under Illinois law. "If an officer has reasonable ground to believe that further trouble will ensue, he need not wait for that trouble to erupt, but may take lawful steps to prevent the problems." Humphrey v. Staszak, 148 F.3d 719, 728 (7th Cir. 1998). As a result, because Heavener possessed the requisite probable cause to effectuate an arrest, he has no liability under § 1983. See Mustafa, 442 F.3d at 547.

### 2. *Excessive Force Claim*

Chelios further alleges that Heavener "intentionally assaulted and battered the Plaintiff." Compl., ¶ 14. Claims alleging that "law enforcement officers have used excessive force, deadly or not, in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Abdullahi v. City of

7

Madison, 423 F.3d 763, 768 (7th Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). In order to determine "whether a particular seizure was reasonable, a court should carefully consider the 'facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Lawrence v. Kenosha County, 391 F.3d 837, 843 (7th Cir. 2004) (quoting Graham, 490 U.S. at 396).

The arresting officer's behavior is "evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." Saucier v. Katz, 533 U.S. 194, 207 (2001). This reasonableness standard takes into account the fact that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Lawrence, 391 F.3d at 843 (quoting Graham, 490 U.S. at 396-97). With these principles in mind, we turn to Chelios' claim.

While law enforcement officers are not afforded an unlimited amount of physical force to detain suspects, the facts in this case demonstrate that Heavener had acted reasonably when he arrested Chelios. Heavener claims, and Chelios admits, that he was excited and agitated when Heavener told him to close down the bar. Furthermore, there is no evidence to suggest that the amount of force Heavener used was excessive, given the circumstances. Even if Chelios was thrown to the ground, and three officers were needed to subdue him, such evidence does not demonstrate that these actions were excessive. An officer's "ability to make a stop and arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to

effectuate it.'" Lawrence, 391 F.3d at 843 (quoting Graham, 490 U.S. at 396). Virtually any suspect who resists arrest, and must have his arms handcuffed behind his back, will suffer even a minimal degree of discomfort.

The issue, however, is whether an office has exceeded his authority, and inflicted unnecessary injury on the suspect. See Abdullahi, 423 F.3d at 768. Here, the court finds that Heavener has not. Chelios had poked Heavener in the chin, yelled at him at close range, and was accompained by Molton, Dimitri's bouncer during a majority of the altercation. Molton, the court notes, attempted to impede Heavener's police duties by placing himself between Heavener and Chelios. In addition, Heavener was responding to a report of shots fired at or around Dimitri's bar, and there was another fight between two females occurring at the same time. Given these circumstances, along with the fact that Chelios had acted hostile and combative to Heavener, the proper amount of force was used to control the situation.

Moreover, Chelios did not request any medical attention, or for transportation to a hospital. The record is silent as to any treatment Chelios received for his alleged injuries. The evidence contains no doctors records, hospital bills, x-rays, or other forms of medical treatment that Chelios was required to undergo as a result of Heavener's alleged excessive force.

### 3. *Qualified Immunity*

Lastly, in regards to the issue of qualified immunity, "application of the Graham reasonableness standard is both necessary . . . and sufficient to resolve cases of this genre." Saucier, 533 U.S. at 210 (Ginsberg, J., concurring). Put another way, "an officer who uses force that is objectively reasonable in 'light of the facts and circumstances confronting [him]' simultaneously meets the standard for qualified immunity." Id. (quoting Graham, 490 U.S. at 397). Therefore, the court need not engage in a qualified immunity analysis.

## III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment. Furthermore, with respect to the assault and battery claims in Count II, in light of the statements contained in this Opinion, the court finds that the force used by the arresting officers was reasonable, and that no assault or battery occurred. Therefore, the court grants summary judgment in favor of Defendant, as to Counts I and II of the Complaint.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 10/31/06